UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS BLUMENTHAL,

       Petitioner,

v.                                                               Case No. 2:08-cv-14858
                                                              Honorable Victoria A. Roberts

MICHAEL CURLEY,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I.  INTRODUCTION

       This is a habeas case filed pursuant to 28 U.S.C. § 2254.  On November 19, 2008, Petitioner Thomas Blumenthal, a state prisoner incarcerated by the Michigan Department of Corrections at the Parnall Correctional Facility in Jackson, Michigan, filed this Habeas Petition challenging his 2004 plea-based convictions for two counts of child sexually abusive material or activity, and four counts of using a computer to commit a crime.  Petitioner's plea hearing took place on May 12, 2004, in the Wayne County Circuit Court.  On May 28, 2004, the trial judge sentenced him to concurrent prison terms of (1) seven years, one month to twenty years, (2) three years, four months to seven years, and (3) two to four years.

       In his *pro se* pleadings, Petitioner alleges he is entitled to habeas relief because (1) his sentence exceeded the plea agreement and therefore the plea was not knowingly made, (2) his plea was unknowing because he was required to register as a sex offender, (3) the trial court should have allowed him to withdraw his plea prior to sentencing because he did not know that he would have to register as a sex offender, (4) he was not properly informed of the nature and

cause of the accusations and therefore his guilty plea was involuntary, and (5) trial counsel was ineffective.

Respondent argues in his Answer to the Habeas Petition that Petitioner's claims are procedurally barred from habeas review, not cognizable on habeas review, or without merit.

The Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## II. BACKGROUND

On March 9, 2004, Petitioner was arraigned on twelve felony counts: (1) three counts of producing child sexually abusive material, in violation of MICH. COMP. LAWS § 750.145c(2), (2) three counts of possessing child sexually abusive material, in violation of MICH. COMP. LAWS § 750.145c(4), (3) three counts of using a computer to commit a crime–production of child sexually abusive material, in violation of MICH. COMP. LAWS § 752.797(3)(f), and (4) three counts of using a computer to commit a crime–possession of child sexually abusive material, in violation of MICH. COMP. LAWS § 752.797(3)(d). He also was charged as a habitual offender, third offense, in violation of MICH. COMP. LAWS § 769.11. A preliminary exam was held on March 15, 2004, and Petitioner was bound over on all charges.

Plea negotiations were conducted between defense counsel and the prosecutor. On April 21, 2004, the prosecutor sent a letter to defense counsel detailing some of the terms discussed. The letter stated in part: "[B]y dropping the habitual offender notice, the maximum sentence is reduced by about 3 years. If he goes to trial and is convicted his maximum sentence would be over 9 years, where under the plea his maximum sentence is only about 6 years."

On May 12, 2004, Petitionerpleaded guilty to two counts of producing child sexually abusive material and four counts of using a computer to commit a crime. In exchange, the prosecutor dismissed the remaining counts and the habitual offender charge. There was no sentence agreement placed on the record. The following colloquy took place at the hearing.

> THE COURT: Does you client wish to accept the offer that the Attorney General made previously in this matter.
> [DEFENSE COUNSEL] Yes, he does, your Honor.
>
> * * *
>
> THE COURT: []. Now, Mr. Blumenthal, again, is it correct that you wish to accept the People's offer, and plead to the six counts that are Counts 1 and 2, Child Sexual Abusive Activity; which is a 20 year felony. Possession of Child Sexually Abusive Activity, which is a four year felony. And Using a Computer to Commit Child Sexually Abusive Material, which is a 20 year. And Using a Computer to Commit Child Sexual Activity, which is a seven year felony.
> And in exchange for this plea, the People are going to dismiss Counts 3, 5, 6, 9, 11, 12, and Habitual Third, which could increase the penalty how much?
> [PROSECUTOR]: Twice the maximum, your Honor.
> THE COURT: Twice the maximum. They're going to dismiss that.
> Now, Mr. Blumenthal, do you wish to offer a plea of guilty to those charges I have just mentioned?
> [PETITIONER]: Yes, sir.
> THE COURT: Okay.
> THE COURT: Now, you're not on probation or parole now at this time, are you?
> [PETITIONER]: No, sir.
> THE COURT: Okay. Then are you offering this plea freely and voluntarily?
> [PETITIONER]: Yes, sir.
> THE COURT: Did anyone make any threats to you to make you plead guilty? Did anybody threaten you?
> [PETITIONER]: No.
> THE COURT: I mean, did anybody come to you and say, "Look we're going to blow your brains out, or we're going to make so and so happen to you?" Did anybody make any threats at all?
> [PETITIONER]: No, sir.
> THE COURT: Okay.
>
> * * *
>
> [PETITIONER]: The only other thing that was mentioned is you mentioned you

3

> would sentence me concurrently.
> THE COURT:  I didn't say what the sentence would be, but it would be concurrent, whatever it is, to the two years you're serving.  But there has been no sentence agreement on what the sentence will be in this case.
>       Do you understand that?
> [PETITIONER]:  Yes, sir.
> THE COURT:  All right.  Were there promises made to you, other than the fact that I've already told you what the deal is?
> [PETITIONER]:  No, sir.
> THE COURT:  Okay.  This is the full understanding, that the People are going to dismiss three, five, six, nine, 11, and 12, and Habitual Third, which could double the penalty.  Were there any promises made to you other than that?
> [PETITIONER]:  Not that I recall.
> THE COURT:  All right.  Then are you offering to plead guilty because you are guilty?
> [PETITIONER]:  Yes, sir.
> THE COURT:  By pleading guilty, you waive your rights to have a trial by a jury, or a trial by the Court.
>       You also waive your right to be presumed innocent unless the People can prove that you are guilty, beyond a reasonable doubt.
>       You also waive your right to confront and question the witnesses against you.
>       Or to have the Court compel witnesses to come to court and testify for you.
>       You have a right to testify at your trial.
>       You also have a right to remain silent, and not have your silence used against you.
>       You waive your right to claim later on after today that this plea was the results of any promises or threats that are not disclosed to the Court.  Or that it was not your choice to plead guilty.
>       And you waive your rights to have a claim of appeal by right.
>       Do you understand all of your rights?
> [PETITIONER]:  Yes, sir.  I understand.

Plea Hr'g Tr. 3-7 May 12, 2004.

Following his plea hearing, on May 28, 2004, Petitioner appeared in court for sentencing and moved to withdraw his plea on the basis that there was a sentencing agreement.  The Motion was denied.  Petitioner was sentenced to the prison terms described above.

On May 19, 2005, Petitioner filed a *pro per* Delayed Application for Leave to Appeal

with the Court of Appeals, which was rejected for failure to follow the state court rules. Petitioner then requested counsel. Counsel filed another Delayed Application for Leave to Appeal with the Court of Appeals, raising what now form Petitioner's first three habeas claims. The Court of Appeals denied the Delayed Application. *People v. Blumenthal*, No. 271744 (Mich. Ct. App. Sept. 8, 2006).

Petitioner filed an Application for Leave to Appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. On November 29, 2006, the Supreme Court denied his Application. *People v. Blumenthal*, 477 Mich. 951; 723 N.W.2d 863 (2006).

Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on April 16, 2007. *Blumenthal v. Michigan*, 549 U.S. 1349 (Apr. 16, 2007).

On June 14, 2007, Petitioner returned to the state trial court and filed a Post-Conviction Motion, raising what now form his fourth and fifth habeas claims. The trial court denied his Motion. *People v. Blumenthal*, No. 04-3084 (Wayne Cnty. Circuit Court Nov. 13, 2007). Petitioner's subsequent Applications for Leave to Appeal that decision, filed with the state appellate courts, were denied. *People v. Blumenthal*, No. 282633 (Mich. Ct. App. May 6, 2008); *People v. Blumenthal*, 482 Mich. 1031; 769 N.W.2d 199 (2008).

On November 19, 2008, Petitioner filed this Habeas Petition.

### III. DISCUSSION

### A.  Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, ---U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 2011 WL 1225705, at *8 (2011) (holding that "[t]his is a difficult to meet and 'highly deferential standard for evaluating state-court rulings'") (citing *Harrington*, --- U.S. ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24) (internal quotation marks omitted).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, --- U.S. ---, 131 S.Ct. at 786 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

## B. Petitioner's Claims

As an initial matter, Respondent contends that Petitioner's fourth and fifth habeas claims are procedurally defaulted, because he raised them for the first time in his Post-Conviction Motion and failed to show cause and prejudice for failing to raise them in his Direct Appeal, as required by Michigan Court Rule 6.508(D)(3). Petitioner claims that his appellate counsel was ineffective for failing to raise his claims in his Direct Appeal.

The Court agrees with Respondent that these claims are procedurally defaulted, but procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

The Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's procedurally-defaulted claims, claims four and five.

### 1. Sentence Exceeded Plea Agreement and Plea Not Knowingly Made--Lacks Merit

In his first habeas claim, Petitioner alleges that his sentence exceeded the plea agreement because it was a longer sentence than predicted by the prosecutor and, therefore, his plea was not knowingly made. This claim lacks merit because Petitioner was informed at the plea hearing that

there was no sentence agreement and he indicated to the trial court that no promises were made to him other than what was put on the record at the hearing.

The constitutional validity of a plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon Petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20 (1992).

In the present case, after a thorough interrogation of Petitioner, the state judge found that Petitioner's plea was entered knowingly and voluntarily. The Court finds that the record reveals

9

that the trial court informed Petitioner that there was no sentencing agreement and Petitioner acknowledged his understanding. Petitioner also denied that any promises were made to him other than what was placed on the record.

Accordingly, Petitioner's claim that he relied on the prosecutor's alleged predication of what his maximum sentence would be is belied by his contrary responses during the plea colloquy. The Court finds that Petitioner is not entitled to habeas relief in regard to this claim.

### 2. Plea Not Knowingly Made Because It Resulted in Requirement to Register as a Sex Offender–Lacks Merit

In his second claim, Petitioner alleges that his plea was not knowingly made because he was not informed that his convictions would require him to register as a sex offender. Respondent argues that the claim lacks merit because registration as a sex offender is a collateral consequence of the plea that cannot be used to invalidate it.

As stated, a guilty plea is valid if it is entered voluntarily and intelligently based on the totality of the circumstances. *Brady*, 397 U.S. at 749. A plea is voluntary if it is entered into "by one fully aware of the direct consequences." *Id.* at 755, 757. A "defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King*, 17 F.3d at 153.

Additionally, the Sixth Circuit in *United States v. Cottle*, 355 F.App'x 18 (6th Cir. 2009), held that "[m]atters that are beyond the control or responsibility of the district court are collateral consequences of a conviction or plea." *Id.* at *2 (quoting *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002)). Moreover, the Sixth Circuit has characterized sex offender registration requirements as collateral consequences in other situations. *See Leslie v. Randle*,

296 F.3d 518, 522 (6th Cir. 2002) (recognizing registration and notification requirements of a state's sexual predator statute as collateral consequences of a conviction).

The fact that Petitioner has to register as a sex offender is only a collateral consequence of his guilty plea. Therefore, the trial court was not required to inform him of that fact for the plea to be valid. Accordingly, Petitioner's guilty plea was valid and he is not entitled to habeas relief with respect to this claim.

### 3. Trial Court Erred in Not Allowing Petitioner to Withdraw His Plea–Not Cognizable

In his third habeas claim, Petitioner argues that the trial court erred in not providing him an opportunity to withdraw his plea under Michigan Court Rule 6.310. This claim is not cognizable on habeas review because it is a state-law claim.

Petitioner cannot show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, 76 F.3d 378, at *2 (6th Cir. 1996) (Table); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec.5, 2002); *see also Johnson v. Prelesnik*, No. 2:08-cv-13741, 2010 WL 2804937, at *7-8 (E.D. Mich. June 23, 2010) ("[a] criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea") (citing *Chene*, 76 F.3d, at *2).

Accordingly, the trial court's failure to not allow Petitioner to withdraw his plea under

11

the governing state-court rules does not state a cognizable basis for habeas relief.

### 4. Plea Was Not Knowingly and Intelligently Made–Lacks Merit

In claim four, Petitioner alleges that his guilty plea was not knowingly and intelligently made because he was not properly advised of the nature and cause of the accusations. He raised this claim for the first time in his Post-Conviction Motion. Thus, the claim is procedurally defaulted. However, for the reason stated in section III, B, *supra*, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

As stated, when a petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *Boykin*, 395 U.S. at 242; *see also United States v. Broce*, 488 U.S. 563, 570 (1989) (same). A plea is voluntary if it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. *See Brady*, 397 U.S. at 755; *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir.2009), *cert. denied*, --- U.S. ---, 130 S.Ct. 3322 (2010) (The defendant must appreciate the consequences of his plea, waive his rights without being coerced, and understand the rights that he is surrendering). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing if nothing indicates that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756.

During the plea hearing, the trial court addressed Petitioner personally and was satisfied that he was competent to make the plea. A review of the plea-hearing transcript, as summarized above, demonstrates that Petitioner's plea was voluntary and intelligent as set forth by the

relevant United States Supreme Court precedent. *See* section II, *supra*. There was no evidence presented that Petitioner had a medical or psychological history that would prevent him from understanding the proceedings. At no time during the plea proceedings did he appear to be incoherent or incapacitated.

Accordingly, the Court finds Petitioner's plea was knowingly and voluntarily made. He is not entitled to habeas relief with respect to this claim.

### 5. Ineffective Assistance of Counsel–Lacks Merit

In his final habeas claim, Petitioner alleges that defense counsel was ineffective when counsel (1) failed to advise him with respect to the sentencing consequences of his guilty plea, (2) failed to advise him of the essential elements of the offense prior to his plea, and (3) failed to assist him with his Motion to Withdraw the Plea. This claim was raised for the first time in Petitioner's Post-Conviction Motion. As with claim IV, this claim is procedurally defaulted, but for the reason stated in section III, B, *supra*, the Court finds that the interests of judicial economy are best served by addressing the merits of the claim.

Generally, to prevail on an ineffective assistance of counsel claim on habeas review, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The two-part *Strickland* test also applies to challenges to guilty pleas on the basis of ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In the context of guilty pleas, the first half of the *Strickland* test is nothing more than a restatement of the

13

standard of attorney competence set forth in *Tollett v. Henderson*, 411 U.S. 258 (1973), and *McMann v. Richardson*, 397 U.S. 759 (1970). The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59.

The trial-court transcript shows that Petitioner acknowledged at the plea hearing that he understood the entire plea agreement, that he had an opportunity to discuss the plea with his attorney, and that he was satisfied with his attorney's representation. He further represented that he was fully aware of the rights he was waiving by entering the plea. Petitioner was informed on the record both of the mandatory minimum sentences and the maximum sentences on all counts. He confirmed that his plea was undertaken freely and voluntarily and with full understanding.

With that, the Court finds that Petitioner has not shown a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. Rather, the Court finds that Petitioner has failed to show that his attorney was ineffective in this regard.

Petitioner further claims that counsel was ineffective for failing to assist him with the filing of his Motion to Withdraw the Plea. It is Petitioner's position that counsel was absent during a critical stage of his criminal proceedings.

The complete denial of counsel at a critical stage of a criminal proceeding is structural error requiring automatic reversal, even without the showing os actual prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). However, in this case, Petitioner was not denied counsel. Rather, counsel's decision not to move the trial court to withdraw Petitioner's valid guilty plea

was most likely a tactical decision on the part of counsel. *See Strickland*, 466 U.S. at 688 (counsel must have wide latitude in making tactical decisions). The Court will not second-guess defense counsel's trial strategy. *See Parker v. Curtin*, No. 09-CV-13329, 2010 WL 4940011, at *2 (E.D. Mich. Nov. 30, 2010) (Tarnow, J.) ("Because advocacy is an art and not a science, . . . [counsel's] strategic choices must be respected.") (citing *Strickland*, 466 U.S. at 690)).

The Court finds that Petitioner failed to demonstrate either prong of the *Strickland* standard and is not entitled to habeas relief with respect to his ineffective-assistance-of-counsel claims.

### C.  Certificate of Appealability

The Court also declines to issue a Certificate of Appealability (COA). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The district court must issue or deny a [COA] when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Miller-El*, 537 U.S. at 327 (same). When a federal court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

15

The Court declines to issue Petitioner a COA; reasonable jurists would not find it debatable whether this Court was correct in its rulings.

## IV.  CONCLUSION

For the reasons stated, the Court: (1) DENIES Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] with prejudice, and (2) DECLINES to issue Petitioner a COA.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 7, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and Thomas Blumenthal by electronic means or U.S. Mail on December 7, 2011.

S/Linda Vertriest
Deputy Clerk